UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| REBECCA MARTINEZ,<br>        *Plaintiff*,<br><br>        v.<br><br>STATE OF CONNECTICUT,<br>        *Defendant*. | No. 3:13-cv-00457 (JAM) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a case about alleged gender discrimination by the Connecticut Department of Correction (DOC) against a female correctional officer. For purposes of summary judgment, there is no question that plaintiff was wrongfully terminated from her job with the DOC. She was accused of excessive absences from her job, but a union arbitrator found these accusations to be unsubstantiated and to be premised on a less than fair and thorough investigation. The primary issue here is whether a genuine issue of fact remains to suggest not only that plaintiff was wrongfully terminated but also that she was terminated for discriminatory reasons having to do with her female gender. I conclude that there is no genuine issue of fact in this record to show that gender discrimination was a motivating factor with respect to the termination of plaintiff's employment or any of the other alleged adverse actions taken against her. Accordingly, I will grant defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff Rebecca Martinez has worked as a correctional officer for the DOC since June 1997. In April of 2010, following an internal investigation and hearing, defendant terminated plaintiff's employment at Osborne Correctional Institution on the asserted ground that she had

1

abused DOC's "leave" policy due to excessive absences. Her dismissal was effective May 3, 2010.

Plaintiff timely filed a grievance with her union. The union and the State of Connecticut Office of Labor Relations negotiated for many months about a potential stipulated agreement for plaintiff to be able to return to work. She was offered that agreement in February 2011 but refused it. In November 2011, the parties entered arbitration to resolve whether there was "just cause" for the termination of plaintiff's employment. The arbitrator found that plaintiff was terminated without just cause and ordered defendant to reinstate plaintiff with full back pay. Plaintiff returned to work in July 2012.

Prior to her termination, plaintiff had applied in 2008 for a promotion to the position of lieutenant. Although her institution recommended her for promotion, she was later taken off the list of eligible candidates because of her alleged violations of DOC's leave policy. Plaintiff did not receive the promotion. In 2012, she was again recommended for promotion but did not receive the promotion. In 2009, the DOC facility where plaintiff worked had three or four female lieutenants out of eighteen total lieutenants; the record does not reflect how many women were promoted in 2008 or 2012.

In 2013, plaintiff filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities. Plaintiff now alleges gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).[1] She alleges gender discrimination with respect to her termination of employment, with respect to her award of allegedly less than full back pay upon her reinstatement, and with respect to the failure of defendant to promote her to a lieutenant position.

---

[1] The complaint also alleged two counts of discrimination under the Connecticut Fair Employment Practices Act, but plaintiff has agreed that these two claims must be dismissed under the Eleventh Amendment. *See, e.g., Wagner v. Connecticut Dep't of Correction*, 599 F. Supp. 2d 229, 237 (D. Conn. 2009).

2

**DISCUSSION**

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if, upon viewing the facts in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*) (discussing standard of review that applies to a motion for summary judgment).

Title VII prohibits gender-based discriminatory action by employers. *See Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). To defeat a motion for summary judgment in a Title VII case, plaintiff must show facts that would allow a reasonable jury to find she has established a *prima facie* case under the well-established *McDonnell Douglas* test: that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). The plaintiff's burden to establish a *prima facie* case is "*de minimis*: it is neither onerous, nor intended to be rigid, mechanized or ritualistic." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). But "[e]ven in the discrimination context ... a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (*per curiam*).

For a failure-to-promote claim, the test is similar: "In order to establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff ordinarily must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position

remained open and the employer continued to seek applicants having the plaintiff's qualifications*," Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (*per curiam*), or, alternatively, that the position was filled by someone not in the plaintiff's protected class. *De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).

If a plaintiff establishes such a *prima facie* case, the burden then shifts to the defendant to give a "legitimate, non-discriminatory reason" for the adverse employment action or non-promotion. *Vega*, 801 F.3d at 83, *Estate of Hamilton*, 627 F.3d at 55. If the defendant articulates a legitimate reason, then the burden shifts back to the plaintiff to show that the proffered reason for the action was pretextual. *Vega*, 801 F.3d at 83. The plaintiff may show pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981); *see also Delaney*, 766 F.3d at 168. In showing pretext, the plaintiff must show both that the employer's stated reason is untrue or incomplete *and* that discrimination was a motivating factor for her discharge. *See Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 157 (2d Cir. 2010). Often, the evidence offered of pretext is similar to the evidence offered for the fourth prong of the *prima facie* case, and thus these two inquiries "tend to collapse as a practical matter under the *McDonnell Douglas* framework." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002).

### *Termination of Employment*

As to plaintiff's claim for discriminatory termination, I conclude that she has failed to establish even a *prima facie* case for gender discrimination, much less has she established a

genuine issue of fact to show pretext and that gender discrimination was a motivating reason for defendant's employment actions against her. To be sure, the arbitrator concluded that defendant lacked just cause under the union contract for terminating plaintiff's employment—that the investigation of her alleged misconduct was not "fair and thorough" and did not provide "substantial proof" of her violation of DOC leave policies. Doc. #54-6 at 12. But the arbitrator did not address the question of gender nor conclude that defendant acted on the basis of gender discrimination.

Absent some evidence—direct or indirect—of discrimination, the fact that an employer may wrongfully terminate an employee on the basis of facts that are later determined not to be true does not by itself suffice to create a genuine issue of fact of discrimination. *See, e.g., Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."). "[W]ithout more, a lack of 'just cause' is legally insufficient to show that the [defendant's] legitimate reasons for disciplining [plaintiff] and ultimately terminating her employment were pretexts for unlawful discrimination." *Frankenberg v. Potter*, 2009 WL 773502, at *7 (W.D. Ky. 2009). Indeed, "no federal rule requires just cause for discharges," and the fact that an employer's "reason [for discharge that is] honestly described but poorly founded is not a pretext as that term is used in the law of discrimination," unless plaintiff can "point to facts suggesting that the company investigated her differently because" of reasons of discrimination. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997); *see also Worster v. Carlson Wagonlit Travel, Inc.*, 2005 WL 1595596, at *3 (D. Conn. 2005) (finding a poorly handled FMLA investigation did not establish evidence of discrimination), *aff'd*, 169 F. App'x 602 (2d Cir. 2006).

And this is where plaintiff's claim falls short: for lack of any evidence that defendant acted against her with a discriminatory motive. For example, plaintiff does not point to any sexist or other gender-based comments by her supervisors. When plaintiff was asked in her deposition what the basis was for her claim of discrimination, she said that "I just know" that the reason for her adverse treatment was because of her gender:

> Q: Why on that day did you think you were being discriminated against?
> A: I just know.
> Q: But why?
> A: I just had the feeling. I just know.
> Q: So you need to elaborate. You had a feeling?
> A: Yes, I know you cannot prove feelings. I understand that. But I just know.
> Q: So did somebody tell you that they were discriminating against you?
> A: Barbara Hawkins [union rep] told me a couple of things that the warden was told.
> …
> Q: So you just told me Chapdelaine was told by somebody to deny the last two leave conversion request; right?
> A: Yes.
> Q: Why would that be related to your disability or your gender?
> A: I don't know why, but it is, unfortunately.
> Q: Did Warden Chapdelaine ever say anything derogatory about your gender?
> A: Absolutely not.

Doc. #46-4 at 87-88. A plaintiff's subjective belief, intuition, or suspicion that he or she has been the target of discrimination is not competent evidence of a defendant's discriminatory animus. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999).

As evidence of gender animus, plaintiff points to the fact that following her termination she did not receive a stipulated agreement offer to return to work from the DOC's Office of Labor Relations until nine months after her termination, while male co-workers who had

6

similarly been terminated by the DOC for excessive absences from work had received their offers more quickly. But plaintiff offers only her own hearsay statement that male counterparts received return-to-work offers more quickly than she did; she failed to substantiate any of these facts during the course of discovery. *See* Doc. #46-4 at 73-86. In addition, plaintiff admitted in her deposition that there were other, unrelated problems between the Office of Labor Relations and her union (which was negotiating the offer on her behalf) that delayed the offer of the stipulated agreement – in her words, her offer "got put on the back burner." Doc. #46-4 at 99-100. Accordingly, there is no properly admissible evidence of gender discrimination with respect to the timing of issuance of stipulated return-to-work agreements for her and her similarly situated male colleagues.

      Plaintiff indirectly argued in her briefing, and more directly at oral argument on this motion, that the Court can infer gender discrimination in her 2010 termination from the fact that she was not promoted in 2008 and 2012. *See* Doc. #54-2 at 15. But this connection is too attenuated based on the available evidence. The 2008 non-promotion and the 2010 termination were—as far as the Court can tell from the record—both primarily based on the same flawed assessment of plaintiff's absences by the defendant. Though plaintiff offers some bare statistical evidence of a paucity of female lieutenants at Osborn Correctional to show gender discrimination in her 2008 non-promotion, she does not connect the 2008 non-promotion and the 2010 termination, beyond both of those events being caused by her alleged excessive absences. As noted above, there is no evidence identified by plaintiff to suggest that the flawed investigation into plaintiff's absences had anything to do with her gender. As such, the 2010 termination did not occur in circumstances giving rise to an inference of discrimination. In addition, plaintiff identifies very little evidence about the allegedly gender-based 2012 non-promotion, and she

does not connect that non-promotion with the 2010 termination in any way in the briefing or the record. In sum, plaintiff has not provided sufficient evidence to establish a *prima facie* case of gender discrimination, much less a genuine issue of pretext and discrimination with respect to her termination.

### *Back Pay*

Plaintiff also contends that she was not awarded full back pay, as ordered by her arbitration award, because of defendant's gender discrimination. When defendant calculated her back pay, the award did not include special holiday overtime that plaintiff would have earned if she had worked the standard schedule during the time she was terminated. Again, plaintiff makes no connection—even an indirect or attenuated one—between her gender and the way the back pay award was calculated. Plaintiff stated that she should have received twenty-six holidays with greater pay rather than the nine holidays that were included in her back pay. She based this calculation on her projected schedule, which she determined using the DOC's complicated rotation schedule starting from her last day of work in 2010. *See* Doc. #54-5 at 62-63. Her projection did not include any sick days, vacation days, or other leave—an estimate that defendant questioned during discovery.

Nevertheless, even taking plaintiff's projection as accurate and in the light most favorable to her as the non-movant, the record does not reflect any evidence that would allow a reasonable juror to infer that the miscalculation of holidays was due to plaintiff's gender. Plaintiff does not assert that defendant calculated her back pay differently from males' back pay, or that the person in charge of the calculations referenced her gender in any way. Plaintiff offered no testimony regarding her gender and the back pay in her deposition. The miscalculation challenge seems to be entirely mathematical and offered in support of the argument that plaintiff suffered an adverse

employment action, rather than in support of the argument that she suffered gender discrimination. *See* Doc. #54-2 at 13-14. Based on this lack of evidence, the Court concludes that plaintiff has failed to prove a *prima facie* case of discrimination as to the calculation of her back pay.

### *Failure to Promote*

As noted above, the *prima facie* case for proving a failure-to-promote claim is slightly different than for proving a termination claim: plaintiff must show either that the position to which she sought promotion remained actively open or that the position was filled by someone not in plaintiff's protected class. *See Estate of Hamilton,* 627 F.3d at 55; *De la Cruz*, 82 F.3d at 20. For disparate treatment cases, the Second Circuit has stated that "statistics alone are insufficient to establish a prima facie case under the *McDonnell Douglas* framework." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *Martin v. Citibank, N.A.*, 762 F.2d 212, 218 (2d Cir. 1985).[2] Plaintiff offers some statistical evidence in support of her claim that the decisions to not promote her in 2008 and 2012 were both improperly based on her gender, but this circumstantial evidence she provides does not satisfy the fourth prong of the *McDonnell Douglas* test in the failure-to-promote context.

Primarily, plaintiff presents the following evidence in support of her failure-to-promote discrimination claim: (1) that in 2009, only three or four of eighteen lieutenants at Osborn Correctional were women, making up approximately 20% of the lieutenants (Doc. #54-8 at 3) and (2) that during both the 2008 and 2012 promotion processes at Osborne Correctional five

---

[2] Plaintiff cites *Gallo v. Prudential Residential Services*, 22 F.3d 1219 (2d Cir. 1994), for the proposition that "direct, statistical, or circumstantial evidence" may be used to establish genuine issues of material fact regarding discrimination at the summary judgment stage. *Id.* at 1225. But neither the district court nor the Second Circuit in that case actually considered any statistical evidence in that age discrimination case. This Court finds the Second Circuit's more involved reasoning in *Reynolds* to be controlling on this issue.

similarly-situated men were promoted while plaintiff was not promoted. Doc. #54-5 at 7-9, 31-32. Plaintiff contends that this shows that gender was a factor in her non-promotion; but for her gender, she claims, her promotion would have been "automatic." Doc. #54-5 at 56. Plaintiff was recommended for promotion, but later "was given a letter . . . saying they were taking me off of the promotion list due to attendance" in 2008. Doc. #54-5 at 8-9. Plaintiff was not informed why she did not receive the promotion in 2012. *Ibid*.

Viewing this evidence in the light most favorable to plaintiff, she again has not shown a *prima facie* case of gender discrimination regarding her non-promotion in 2008. While the Court credits plaintiff that defendant should not have removed her from the promotion list in 2008 for absences that were likely erroneously marked against her, the minimal information given about who was *actually* promoted or applied for promotion presents an insurmountable obstacle for plaintiff in proving her case. The record does not reflect how many women applied for lieutenant positions in 2008—perhaps one of the women lieutenants that Warden Chapdelaine testified held the position in 2009 was indeed promoted during the 2008 cycle. Or perhaps only men were promoted in 2008. The record does not say; rather, the record only shows that five men were promoted in both 2008 and 2012. The record does not establish that only five people (all male) were promoted to lieutenant each year, and the Court cannot infer discrimination on such an assumption.

Plaintiff apparently sought no discovery of defendant's records on this point in order to attempt to prove her claim of discrimination with respect to promotion. Instead she relies on fragmentary numerical data adduced during her deposition and during the deposition of Warden Chapdelaine. Plaintiff has not shown that the position she sought remained open; nor has she shown that no woman was promoted and that only men were promoted. Because the fourth prong

of the *McDonnell Douglas* test for failure-to-promote requires plaintiff to show that either the position remained open or that a man was promoted to the position, plaintiff has failed to establish even a *prima facie* case, much less to carry her ultimate burden to show a genuine issue of fact of gender discrimination that was a motivating factor for her failure to win a promotion.

## CONCLUSION

For the foregoing reasons, I conclude that no genuine issue of fact remains with respect to plaintiff's claims of gender discrimination. Accordingly, defendant's motion for summary judgment (Doc. #46) is GRANTED.

It is so ordered.

Dated at New Haven this 23rd day of February 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge